McGRAW–EDISON COMPANY, a Corporation, Plaintiff and Appellant,

v.

Paul HAVERLUK and Mrs. Paul Haverluk, Defendants and Respondents.

No. 8053.

Supreme Court of North Dakota.

Oct. 15, 1964.

Conmy, Conmy & Feste, Fargo, for appellant.

Floyd B. Sperry, Bismarck, for respondent.

BURKE, Judge.

Plaintiff brought this action to repossess certain merchandise as the assignee of a conditional sales contract. The defendant answered and counterclaimed, alleging breach of warranty. By claim and delivery proceedings the plaintiff secured possession of the merchandise and sold it. Thereafter the case went to trial upon defendant's counterclaim, before the court without a jury, and judgment was awarded to the defendant. The plaintiff then moved for a new trial which was denied. This appeal is from the order denying a new trial.

There were five grounds set forth in the motion for a new trial. They may be combined under three general headings: (1) insufficiency of the evidence to support the judgment, (2) errors of law occurring at the trial and (3) newly discovered evidence. We shall deal first with the specifications as to the insufficiency of the evidence.

The defendants are residents of Belfield, N. D. They operated a dry cleaning business and in February 1960 were contemplating enlarging their business by setting up a coin operated automatic laundry. In furtherance of this intended enterprise they entered into extended negotiations with a representative of Midwest Laundry Equipment Corporation of Omaha, Nebraska. The city water in Belfield, which was the only water available for use in the proposed laundry, at irregularly occurring intervals became brown in color and at such times it was unsuitable for laundry purposes as it would stain the articles which were being washed. Most of the negotiations concerned this water problem and the defendants as a condition of purchasing any equipment insisted that there be included water treatment equipment which would eliminate the problem. The agent of the laundry equipment sales company sent samples of the water to the Bruner Corporation of Milwaukee, a manufacturer of water softeners, for analysis and recommendations. The Bruner Corporation made the requested analysis and recommended a water softener which it manufactured. Thereafter on February 17, 1960, the defendants and the laundry equipment sales corporation, by its sales agent, entered into a contract for the purchase of laundry equipment including the Bruner softener. This contract (Exhibit 2) states that there has been sold to Paul Haverluk certain described laundry equipment for a total time selling price of $14,985.50. It recites that there has been a down payment of $1,504.20 leaving a balance of $13,481.30 payable in 35 monthly installments of $374.48 and one installment of $374.59. This contract also provided that either an installment mortgage or conditional sales contract was to be executed to secure the contracted monthly payments. Included in the contract was an express warranty as follows:

"We will guarantee that the Bruner Ca 450 water softener will take care of the water condition which Bruner Corporation has recommended in the letter of February 15, 1960."

The contract also provided that it was subject to acceptance by the Seller.

The down payment in excess of $1,500.00 was made on February 17, 1960, and was accepted by the seller. On April 23, 24 and 25, 1960, the equipment arrived in Belfield and was delivered to the buyer. On April 25, 1960 a conditional sales contract was presented to the defendants for their signatures. The face of this contract recited the terms of the sale in accordance with the provisions of the contract of February 17. It reserved title in the seller but it omitted the express warranty. On the reverse side of the conditional sales contract are three provisions upon which plaintiff relied. They are:

"1. No warranties, express or implied, have been made by the Seller, unless endorsed hereon in writing * * *."

"7. . The Buyer admits notice of the intended sale and assignment of this contract, and covenants and agrees that no waiver or modification shall be valid or binding upon any assignee hereof, unless evidence by his (its) written consent, and that any assignee shall be entitled to all of the Seller's rights herein. It is expressly agreed that this contract shall not be countermanded, and that it shall apply to, inure to the benefit of, and bind the heirs, executors, administrators, successors and assigns of the parties hereto. Any provision of this contract prohibited by the law of any State, as to said State, shall be ineffective to the extent of such prohibition without invalidating the remaining provisions of this contract.

"9. This contract integrates and supercedes all prior agreements, whether written or otherwise, between Seller and Buyer, with reference to this transaction; and represents the final agreement between the parties."

According to the record this conditional sales contract was signed after the equipment had been delivered and installed as it was signed upon the same day that the defendants opened the laundry for business.

From the very beginning of their operation of the business the defendants had difficulties with the water. They made many complaints to the seller without receiving any satisfaction. Defendants testified that they operated the laundry for about three months and that in the middle of August 1960 they ceased operations because of dissatisfied customers. At that time they caused notice of rescission of the contract for breach of warranty to be served upon the seller. After notice of rescission representatives of the seller called on the defendants. The record does not disclose what the conversations were at these times except that it indefinitely intimates that some offers of adjustment were made and refused. Defendants did not make any payments upon the contract after the down payment.

In the fall of 1960, the seller became insolvent and the plaintiff, the manufacturer of the laundry equipment, purchased the conditional sales contract executed by defendants, from the finance company to which it had been assigned. Plaintiff's agent called on defendants in February 1961 for the purpose of persuading defendants to commence payments on the contract. At that time he first learned that defendant claimed to have rescinded the contract. He first learned of the contract (Defendant's Exhibit 2) which contained the express warranty, and he was given a list of the damages claimed by defendants and he was told that defendants "were no longer interested in going through with the contract."

In April 1961, plaintiff elected to seize the property described in the conditional sales contract by claim and delivery proceedings and posted an indemnity bond. Upon receipt of the bond, affidavit for claim and delivery and requisition, the sheriff seized the property described in the affidavit and delivered it to the plaintiff. The plaintiff thereafter sold such property located in the laundry building, and delivered it to a new purchaser.

The basic issue in this lawsuit is whether the express warranty contained in sales contract of February 17, 1960, was abrogated by the conditional sales contract of April 25, 1960.

The sales contract of February 17 was complete in all details except that it provided for the future execution of an installment mortgage or conditional sales contract, presumably to give security for the installment payments. At the time of the execution of this contract the down payment of $1,504.20 was made. Some contention has been made that this contract was not accepted by the seller because no formal notice of acceptance was ever sent to the buyer. However, the acceptance of the down payment by the seller clearly constituted an acceptance of the contract. Upon the execution of this contract the

obligations of the parties became fixed. By its terms, however, the defendants had the duty to give security for the installment payments, as required by the contract. Thereafter, and before the execution of the conditional sales contract, all of the equipment was delivered to the defendant and installed in his place of business as the record shows the defendants signed the conditional sales contract upon the same day that they opened their laundry to the public. It is clear therefore, that there was a completed sale and that the express warranty attached prior to the execution of the conditional sales contract. As part of the consideration for the original purchase contract there remained an obligation upon the purchaser to give security for the installment payments and no more. Any covenants in the conditional sales contract contrary to those in the original contract were entirely without consideration. In view of these circumstances it is our opinion that the two instruments constitute the entire contract between the parties. This is not a case where preliminary negotiations and contracts were merged into a final contract of sale. Here the sale was fully consummated under the original contract and the conditional sales contract was thereafter executed pursuant to its terms. Section 9-07-07 NDCC provides:

"Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together."

In construing a contract the whole thereof must be taken together to ascertain the intention of the parties. Larson v. Wood, 75 N.D. 9, 25 N.W.2d 100. An examination of this contract discloses a direct conflict between its separate parts. The original contract contains an express warranty and there is printed on the reverse side of the conditional sales contract a disclaimer of all warranties, express or implied. However, it is a rule of construction, established in this jurisdiction, that typewritten words of a provision in a contract prevail over printed words, as showing deliberate agreement of the parties. Kern v. Kelner, 75 N.D. 292, 27 N.W.2d 567. It follows that the merchandise described in the contract was sold pursuant to an express warranty.

Upon the question of whether there was a breach of the express warranty there is little dispute. The trial judge found that the warranted water conditioner did not do the job it was guaranteed to do. He also found that the contract was not divisible and that the breach of warranty as to the water conditioner affected the whole contract, because without proper water the rest of the equipment was useless. These findings are clearly in accord with the preponderance of the evidence.

By the provisions of Section 51-01-70 NDCC breach of warranty is made a ground for the rescission of a sales contract by a buyer. As has been heretofore pointed out the defendant buyer in this case served notice of a rescission, coupled with an offer to restore the purchased property to the seller in August 1960. Appellant urges that a rescission cannot be deemed to have been accomplished in this case because there is no proof of notice of rescission and that in any event the attempt to rescind was not promptly made.

Upon the opening day of the trial of this case a copy of the notice of rescission, together with an affidavit of mailing of the same to the seller were filed with the clerk of court and they appear in the record certified to this court. What, if any, procedure was followed to have them inserted into the record does not appear. They were not marked as exhibits or offered in evidence and there is no direct reference to them in the testimony taken at the trial. However, the defendant, Paul Haverluk, testified that notice of rescission was given in August 1960. He was not cross-examined as to this statement and

his statement is in no way challenged in the record. The evidence is thus sufficient to support the trial judge's finding that the notice was given.

■ A rescission meets the requirement of promptness if it is made within a reasonable time after the grounds for rescission have been discovered. Holden v. Advance-Rumely Thresher Co., 61 N.D. 584, 239 N.W. 479. International Harvester Co. of America v. Olson, 62 N.D. 256, 243 N.W. 258. In the instant case the defect was discovered within three days. However, the agent of the seller was still present at the time and attempts were made to remedy the defects. Thereafter, the seller sent other representatives either in an attempt to remedy the defects or to persuade the buyer to go through with his contract. These included the Vice-President of the seller, Don Gravenstein, the President of the seller, Bill Siebert, and a Yaeger Conrad. From the testimony it appears that the three months, during which the defendants tried to operate the laundry, were spent in attempting to get the laundry plant in satisfactory working order and that defendants closed the plant when they were satisfied that this was not possible with the equipment sold them by the seller. In these circumstances it cannot be said that the trial court's finding that a rescission was accomplished within a reasonable time was erroneous.

Here the defendants asked and were awarded not only damages for the return of the portion of the purchase price which had been paid but also for other elements of alleged damage for breach of warranty including rent of the building which housed the laundry, the installation of plumbing and electrical wiring therein and the cost of other incidental improvements to the building. The appellant has specified the allowance of all of these items as error. It is appellant's contention that as an assignee of the conditional sales contract, it has no liability for breach of warranty by the seller nor for payments made by the

buyer to the seller prior to rescission of the contract.

■ We are agreed that appellant is right in this contention. While an assignee of a conditional sales contract ordinarily takes it subject to any defenses which may be raised against the assignor, the assignee does not " * * * assume personal liability to the conditional buyer for damages sustained by reason of the conditional seller's false representations or breach of warranty, nor does he assume liability for payments made by the buyer to the assignor, where the buyer obtains a rescission of the contract on the ground of breach of warranty." 78 C.J.S. Sales § 641, pp. 449, 450; Kavli v. Leifman, 207 Minn. 549, 292 N.W. 210; Securities Inv. Corporation v. Krejci, 128 Neb. 763, 260 N.W. 396.

■ However, by the provisions of Section 51-01-70 NDCC, where a buyer rescinds a contract of sale " * * * if the seller refuses to accept an offer of the buyer to return the goods, the buyer thereafter shall be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, * * *." Thus, in this case, where the seller ignored the respondents' offer to return the goods, respondents acquired a lien thereon to secure the repayment of the down payment they had made.

■ The respondent testified that he told the agents of appellant of his claims and of his refusal to go through with the contract, and that such agents attempted to get him to change his mind. There is thus evidence in the record that appellant was aware of the respondents' claim prior to the commencement of this action. It seized goods which were subject to a lien and sold them. This sale amounted to a conversion of respondents' lien interest in the property and thus warranted a finding by the trial judge that respondents were entitled to judgment against appellant for the value of the interest converted. By the terms of the

statute creating the lien, the lien secured only payments made upon the purchase price. This amount was $1,504.20. The judgment for $3,758.56 was therefore excessive.

Under our view of the case we consider other specifications of error upon the motion for a new trial, immaterial to the issues and they are therefore not considered at length.

The order of the district court denying a new trial will therefore be reversed and a new trial granted unless the respondents will agree to a reduction of the amount of the judgment to $1,504.20 with interest thereon from the date of the rescission of the contract.

MORRIS, C. J., and ERICKSTAD, STRUTZ, and TEIGEN, JJ., concur.