**Harry BERG, Plaintiff and Appellee,**

v.

**Terry HOGAN, Defendant and Appellant.**

**Civ. No. 9984.**

Supreme Court of North Dakota.

Oct. 23, 1981.

Thomas Tuntland, of Pulkrabek & Tuntland, Mandan, for plaintiff and appellee.

Duane E. Houdek, of Houdek & Wolberg, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Terry Hogan appealed from a judgment of the district court of Morton County granting Harry Berg $3,490.33 plus costs of $85 for breach of contract. We reverse and remand for additional findings.

Berg conducted an auction of a spray plane and other equipment used in applying fertilizer and agricultural chemicals. Mid-State Leasing & Investment Company of Mandan owned the equipment and joined Berg in this suit. Mid-State is a partnership in which Bob Chase and Monroe Chase are the only partners. The individual items were first auctioned and then the total package was auctioned. The base price for the package was the sum of the amounts bid on the individual items. Hogan was the successful bidder of the package with an offer of $19,750. Hogan made a downpayment to Berg with a personal check in the amount of $7,750. Nine days later he stopped payment.

Four issues are presented on appeal: How specifically must an affirmative defense be pleaded; what is the effect of an owner's bidding at an auction of his property; may interest paid by the owner be allowed as incidental damages in a breach-of-contract action; and may the auctioneer's commission be awarded as incidental

damages? Because we decide to reverse and remand after considering the first two issues we do not address the last two issues.

Section 41–02–45(4), N.D.C.C. (U.C.C. § 2–328), provides:

"4. If the auctioneer knowingly receives a bid on the seller's behalf or the seller makes or procures such a bid, and notice has not been given that liberty for such bidding is reserved, the buyer may at his option avoid the sale or take the goods at the price of the last good faith bid prior to the completion of the sale. . . ."

Hogan attempted to invoke this statute to avoid the auction contract; however, the trial court ruled that Hogan had not sufficiently pleaded the statute as an affirmative defense. Hogan's first notice to the sellers that he sought to avoid the sale was contained in his answer to the complaint. He alleged that the bid was fraudulently inflated by bids of the sellers or their agents and therefore did not form a binding contract. Berg argued at trial that because Hogan did not specifically cite or quote from Section 41–02–45(4), N.D.C.C., and because Hogan did not seek to amend his pleadings to do so he cannot raise the statute as a defense. A party is required only to "set forth affirmatively [the defense]." N.D.R.Civ.P. 8(c). A court is to construe pleadings so as to do substantial justice. N.D.R.Civ.P. 8(f). Hogan did not have to plead the statute verbatim nor refer to it by section. His answer was sufficient to raise Section 41–02–45(4) as an affirmative defense.

The second issue is whether or not Hogan may avoid the sale. The trial court in its oral ruling from the bench indicated that even if Hogan pleaded Section 41–02–45(4) as an affirmative defense he did not prove that the seller or his agents were bidding at the auction. Hogan testified that while at the auction he had the impression that someone was bidding on behalf of the seller and inflating the bid. Monroe Chase testified that he did bid on some of the individual items. Berg argues that Hogan never proved that Chase bid as an agent of the partnership and not as an individual. We believe that because of the circumstances in this situation Berg's argument would require more than is necessary for Hogan to utilize Section 41–02–45(4). The circumstances are these: Monroe and his brother, Bob Chase, were partners in Mandan Aerial Spraying Service. They sold that business to Rick Nelson. To assist Nelson in purchasing the business, Mid-State Leasing and Investment Company guaranteed Nelson's conditional sales contract with First Northwestern Bank of Mandan. Monroe and Bob Chase are the only partners in Mid-State Leasing. Before trial, counsel for both parties agreed to stipulate that Mid-State was the owner of the equipment on the day of the sale. Monroe testified that after Nelson defaulted on the sales contract "we" had taken over payment of the note. Whether he meant himself and Bob or Mid-State Leasing is unclear. That lack of clarity is additional evidence of the intertwining interests of Monroe and Mid-State Leasing. It was hard for him to separate his interest as an individual and that as a partner in a business when making the above statement. We believe that Section 41–02–45(4) should be construed liberally to require that a seller give notice to a buyer when he bids at his own sale. In this situation it is not unfair to require that a partner in the partnership, which is the seller at an auction, state for whom he is bidding. Because Monroe admitted that he bid at the auction and Hogan proved that the other requirements of the statute were present the trial court should have found, under these circumstances, sufficient proof to invoke Section 41–02–45(4). But, before we may decide that Hogan successfully raised the statute as an affirmative defense we must consider whether or not Hogan acted promptly or with due diligence in rescinding.

In its oral ruling from the bench the trial court indicated that Hogan had not exercised his option to avoid the contract because he had not taken an affirmative act to notify Berg or Chase of his decision to rescind. To determine what requirements a

party must meet in order to rescind we look to other statutes. Section 9–09–02, N.D. C.C., is similar to Section 41–02–45(4). It permits rescission of a contract when fraud is used to obtain the rescinding party's consent to the contract. The party rescinding, however, must comply with Section 9–09–04, N.D.C.C. Relevant here is the requirement that the rescinding party use reasonable diligence to rescind promptly "upon discovering the facts which entitle him to rescind, if he is ... aware of his right to rescind; ..."

■ Hogan testified that he suspected at the auction "that some of the equipment was being bid up by the sellers, and I was competing against them." The testimony also indicates, however, that Hogan decided not to perform under the contract only after he concluded that he paid too much for the equipment and that he was not getting what he felt Monroe and Bob led him to believe he would receive. Section 41–02–45(4) apparently gives the buyer an option. The buyer may avoid the contract or take the goods at the last good-faith bid. The buyer need not avoid the contract at the moment he discovers facts which would permit him to do so but may weigh the advantages and disadvantages of avoiding or taking at a lower price. In *American Life & Casualty Ins. Co. v. Otis Hann Co.*, 124 N.W.2d 830, 833 (N.D.1963), we said: "Where grounds for rescission exist, the motive for rescission or the injury to the party rescinding is immaterial to the exercise of that right." This gives the rescinding party a much greater advantage over the seller because the buyer could analyze whether or not he had made a good purchase. This is not always unfair to the seller. Section 41–02–45(4) is designed to protect the buyer from a seller who inflates the price of the goods being auctioned. If the seller wishes to bid on his own goods he must disclose that fact. It is the seller who places himself at any disadvantage caused by a buyer's use of Section 41–02–45(4).

■ Hogan, however, still must rescind promptly. "A rescission meets the requirement of promptness if it is made within a reasonable time after the grounds for rescission have been discovered." *McGraw-Edison Company v. Haverluk*, 130 N.W.2d 616, 621 (N.D.1964). The sale occurred on May 7, 1980. On May 16, 1980, Hogan stopped payment on the check which he had given to Berg as a downpayment. Hogan told Berg that he had done so in order to arrange a payment in full with the bank holding the conditional sales contract. Berg initiated a suit for breach of contract on June 3, 1980. The trial court, in its oral ruling, indicated that the sellers knew that the contract would not be carried out two to three weeks after the sale, or between May 28 to June 4, 1980. Hogan, however, did not notify the sellers of his intent to rescind or avoid the contract until he answered their complaint on July 7, 1980.

What is reasonable diligence in rescinding in one case would not always be so under the facts of another case. *Adams v. Little Missouri Minerals Association*, 143 N.W.2d 659 (N.D.1966). In some instances notice of rescission under Section 41–02–45(4) can be made as late as an answer to a complaint. The question here is: What was reasonable diligence under the facts? We know that Hogan gave notice of rescission by his answer to the complaint. We must also consider when Hogan knew that the sellers were bidding at the auction. Only then can it be determined whether or not Hogan invoked Section 41–02–45(4) within a reasonable time.

The transcript contains the following question and answer between Hogan's attorney and Hogan:

"Q. Do you know who else bid at the auction on the items?

"A. At the time I knew no one. I still don't. There were some people that did approach me. It's my impression that there were several bids or several bidders, including mine, and in addition to that, I sensed that some of the equipment was being bid up by the sellers, and I was competing against them."

The trial court made no finding of fact which would indicate when Hogan learned that the sellers were bidding on the equip-

ment. Nor does the transcript conclusively reveal when Hogan learned of it. It is necessary, therefore, to remand to the district court for a finding of when Hogan learned of the facts, i. e., that the sellers were bidding, that would allow him to rescind under Section 41–02–45(4).

If the trial court determines that Hogan learned of the facts during or shortly after the auction it should also determine if Hogan's subsequent acts constituted either a waiver of his right to rescind or a ratification of the contract. Hogan's downpayment probably would not constitute a ratification or waiver but his reassurances to Berg about arranging for full payment after he had stopped payment on his downpayment check may do so. It is also possible that Hogan's delay in rescinding, at whatever time he found that the sellers were bidding, was unreasonable due to his silence. Although the time here, from sale to commencement of an action, is relatively short, commercial reasonableness requires that the seller be allowed to assume that the transaction will be completed unless the buyer does something to put him on notice to the contrary. As we said above, in some instances notice of rescission in an answer may be reasonable notice. Whether or not it is here is a factual determination best left to the trial court upon remand. Upon remand the trial court may make additional findings from the existing record or, in its discretion, may hold additional evidentiary hearings.

We reverse the judgment of the district court and remand the case for additional findings.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.