Jerry L. HOLCOMB and Patsy L. Holcomb, Plaintiffs and Appellees,

v.

Marvin L. ZINKE, Dorene Y. Zinke, Defendants and Appellants,

Mark D. Johnson, Jolene Nitschke, and Hometown Realty, Inc., Defendants.

Civ. No. 10742.

Supreme Court of North Dakota.

March 26, 1985.

Fabian E. Noack, Carrington, for plaintiffs and appellees.

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for defendants and appellants Marvin L. Zinke and Dorene Y. Zinke; argued by Gerald W. Jukkala, Jamestown.

LEVINE, Justice.

Marvin L. Zinke, and Dorene Y. Zinke, (Zinkes) appeal from a judgment granting Jerry L. Holcomb and Patsy L. Holcomb (Holcombs) rescission of a contract to purchase the Zinkes' home. Codefendants Mark D. Johnson (Johnson), Jolene Nitschke (Nitschke) and Hometown Realty, Inc., have not appealed from the judgment which also ordered the return of the realtors' commission to the Zinkes.

The Zinkes owned a home located in rural Jamestown. In the fall of 1981 they signed an exclusive right-to-sell listing agreement with Hometown Realty, which Johnson and Nitschke represented. Shortly thereafter the Holcombs moved to Jamestown from Idaho and were contacted by Johnson and Nitschke who offered their professional services to find a residence for the Holcombs. Nitschke subsequently showed the Holcombs the Zinkes' home in the Zinkes' absence. The Holcombs viewed the premises for about one hour but did not inspect the appliances, the sewage system, or the water system. Nitschke, and subsequently Johnson, represented to the Holcombs the house was almost new, in excellent shape, and that everything was in good condition as far as they knew.

On October 13, 1981, the Holcombs and Zinkes executed a purchase agreement for the sale of the home for $85,000.00. Prior to the closing, Johnson informed the Holcombs that their purchase of the Zinkes' home would result in the violation of a local zoning ordinance. However, Johnson and

Nitschke further assured the Holcombs a variance would be granted.[1]

The Holcombs moved in on October 31, 1981. Soon afterwards they discovered that the tap water emitted an offensive odor, and that the dishwasher, garbage disposal, tv antenna, water softener, and kitchen heating system were defective. On December 1, 1981, and on several occasions thereafter, the sewage system backed up, flooding the basement. Ultimately the Holcombs remedied the drainage problem by installing new sewer pipes and drain field. They also repaired the defective appliances and replaced the dishwasher, television antenna, and water softener.

On February 19, 1982, the Holcombs served notice of rescission upon the Zinkes, who refused to rescind the contract. Litigation ensued and following a bench trial the district court entered judgment in favor of the Holcombs. The trial court concluded the Zinkes had suppressed material facts, and their agents, Johnson, Nitschke, and Hometown Realty, had made affirmative misrepresentations concerning the property's condition and its zoning status. The trial court further determined that the Holcombs relied upon the misrepresentations in good faith and were not at fault in failing to discover the defects. The trial court granted rescission and set off the value of the Holcombs' use of the home against their expenditures for repairs and replacements. This appeal by the Zinkes followed.

The first issue on appeal is whether or not the trial court erred in granting rescission. The right to rescind a contract on the ground of fraud is granted by North Dakota Century Code § 9–09–02(1).[2]

▪ Rescission is proper only if the party seeking rescission uses reasonable diligence to rescind promptly upon discovery of the fraud and to restore to the other party anything of value which was received under the contract. *Blair v. Boulger*, 358 N.W.2d 522 (N.D.1984), *cert. denied*, — U.S. —, 104 S.Ct. 491, 78 L.Ed.2d 685 (1983), *reh'g denied*, — U.S. —, 104 S.Ct. 1018, 79 L.Ed.2d 247 (1984); *Berg v. Hogan*, 311 N.W.2d 200 (N.D.1981); *Lanz v. Naddy*, 82 N.W.2d 809 (N.D.1957). A party failing to promptly exercise the right of rescission upon discovery of the facts necessary for rescission waives that right. *Berg, supra*. Timeliness of rescission is a question of fact to be concluded from the circumstances of each particular case, *Robertson Companies, Inc. v. Kenner*, 311 N.W.2d 194 (N.D.1981), and is not necessarily to be determined by the amount of time lapsed before the attempted rescission, the important considerations being whether or not the period has been long enough to prejudice the other party. *Berg, supra*.

▪ Restoration of the status quo as a requirement for rescission is based upon the essentially equitable nature of rescission. *Boulger, supra; Volk v. Volk*, 121 N.W.2d 701 (N.D.1963). To be effective, the offer to restore the status quo should include an offer to remit any rent collected or the reasonable value of using the premises during the period of occupancy and cannot be conditioned upon payment of damages. *Alton's, Inc. v. Long*, 352 N.W.2d 198 (N.D.1984).

▪ As the foregoing principles demonstrate the propriety of the trial court's decision to grant rescission is dependent on sufficient proof of three propositions: (1) the Holcombs' consent to enter into the contract was obtained through fraud; (2) the Holcombs exercised reasonable diligence in rescinding promptly upon discovery of the fraud; and (3) the Holcombs restored the status quo.

---

1. On November 10, 1981, following a hearing the Holcombs were denied a zoning variance.

2. NDCC § 9–09–02(1) reads: "If the consent of the party rescinding or any party jointly contracting with him was given by mistake or ob-

tained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party."

As to the first proposition, the matter of fraud, the trial court determined that the Zinkes suppressed material facts, and that their agents, Johnson, Nitschke, and Hometown Realty, made affirmative misrepresentations of the condition of the property and its zoning status.[3] Although the trial court's "conclusions" did not specify whether the Zinkes or their agents engaged in actual fraud, NDCC § 9–09–08, or constructive fraud, § 9–03–09, the trial court's reliance in its memorandum opinion on *Asleson v. West Branch Land Co.*, 311 N.W.2d 533 (N.D.1981), a case involving constructive fraud, to support its conclusions of law,[4] indicates the trial court determined the Zinkes engaged in constructive fraud. We agree.

Constructive fraud is defined by NDCC § 9–03–09(1) as any breach of duty which, without actual fraudulent intent, gains an advantage to the person at fault by misleading another to his prejudice. *Asleson, supra* at 537.

Directing our attention to the question of breach of duty, we note that whether or not a duty exists is a question of law. *Kirton v. Williams Elec. Co-op. Inc.*, 265 N.W.2d 702 (N.D.1978). Constructive fraud is based on a relationship between the parties which gives rise to a duty of disclosure. *Asleson, supra* at 535. While that duty may arise from a fiduciary or other confidential relationship there is no such relationship between the Zinkes and Holcombs. Thus any duty of disclosure must arise from other circumstances.

Historically, the rule of caveat emptor shielded the seller of real estate from any duty to disclose, the buyer assuming all risks. The rule was stated in *Wilhite v. Mays*, 232 S.E.2d 141, 142 (Ga.Ct.App. 1976), *aff'd* 235 S.E.2d 532 (Ga.1977), quoting *Peek v. Gurney*, L.R. 6 H.L. 377, 403

(1873): "Mere non-disclosure of material facts, however morally censurable ... would ... form no ground for an action in the nature of misrepresentation."

While such a rule may have had some merit in the agrarian society in which it was applied, the same cannot be said for its continued application to the complexities of our society. As the Georgia Court of Appeals aptly reasoned in support of its abandonment of caveat emptor in favor of imposing a duty to disclose:

"However, the sale of farm acreage [with] simple residence—the type of transaction to which caveat emptor originally addressed itself—is very different from the sale of a modern home, with complex plumbing, heating, air conditioning, and electrical systems .... The ancient rule ... is no longer an expression of American mores...." *Wilhite v. Mays, supra* at 143.

The rationale for a duty to speak can be found in *Liland v. Tweto*, 19 N.D. 551, 125 N.W. 1032 (1910):

"When parties deal at arm's length the doctrine of caveat emptor applies, but the moment that the vendor makes a false statement of fact, and the falsity is not palpable to the purchaser, he has an undoubted right to implicitly rely upon it. That would indeed be a strange rule of law which, when the seller has successfully entrapped his victim by false statements, and was called to account in a court of justice for his deceit, would permit him to escape by urging the folly of his dupe was not suspecting that he (the seller) was a knave." 125 N.W. at 1039.

Silence may be as misleading as a positive misrepresentation of fact and lead to the very entrapment which concerned the court in *Liland* enough to create an exception to caveat emptor in that

---

**3.** It is undisputed that Johnson, Nitschke, and Hometown Realty were the Zinkes' agents and as such their conduct could be imputed to the Zinkes. NDCC §§ 3–01–06 and 3–03–09, and *Kruger v. Soreide*, 246 N.W.2d 764 (N.D.1976).

**4.** The trial court appeared to conclude as a matter of law the Zinkes' conduct constituted

constructive fraud. However, the existence of fraud is ordinarily a question of fact. *Powers v. Martinson*, 313 N.W.2d 720 (N.D.1981). Nevertheless, we recognize and consider findings of fact regardless of the label that may be placed upon them. *Matter of Estate of Mehus*, 278 N.W.2d 625 (N.D.1979).

case. The happenstance that in the instant case the Zinkes made no affirmative false statement of fact neither diminishes the persuasiveness of the *Liland* court's analysis nor precludes its application to the present case. For it is well settled that fraud may occur without the making of a false statement. *Dvorak v. Dvorak*, 329 N.W.2d 868 (N.D.1983). The suppression of a material fact, which a party is bound in good faith to disclose, is equivalent to a false representation. *Verry v. Murphy*, 163 N.W.2d 721 (N.D.1969).

█ We conclude therefore that in cases of passive concealment by the seller of defective real property, there is an exception to the rule of caveat emptor, applicable to this case, which imposes a duty on the seller to disclose material facts which are known or should be known to the seller and which would not be discoverable by the buyer's exercise of ordinary care and diligence. *See, Hauck v. Samus* 321 N.W.2d 68 (Neb.1982); *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655 (Tex. 1979); *Posner v. Davis*, 76 Ill.App.3d 638, 32 Ill.Dec. 186, 395 N.E.2d 133 (Ill.App. 1979); *Wilhite v. Mays, supra; Lingsch v. Savage*, 213 Cal.App.2d 729, 29 Cal.Rptr. 201 (Cal.1963).

While the relationship between seller and buyer may not be a fiduciary or confidential one, it is marked by the clearly superior position of the seller vis-a-vis knowledge of the condition of the property being sold. The duty to speak imposes no undue hardship on the seller and it accords with our basic notions of fair dealing and fair play.

While the Zinkes concede that they owed a duty not to misrepresent known material facts, they contend they are not liable for their failure to inform the Holcombs of defects of which they were not aware.

█ The trial court, however, found that the Zinkes had experienced ongoing problems with the sewer system which necessitated pumping the sewer at least every two weeks in response to its backing up. While he denied any problems with the sewer system, Mr. Zinke testified that it was necessary to pump the drain field every two weeks and the septic tank occasionally, explaining that the sewer would back up into the basement if "you didn't pump it out." Mr. Zinke also testified that the water did smell "occasionally" but that the smell did not bother him and they simply "lived with" the unpleasantness. A test conducted for the purpose of litigation established that the water was contaminated and polluted.

Under North Dakota Rule of Civil Procedure 52(a) findings of fact are governed by the clearly erroneous standard of review. The record in this case amply supports the trial court's findings that the water and sewage system were known by the Zinkes to be defective and that no disclosure of any such problem was made to the Holcombs by either the Zinkes or their agents.

█ Next to be resolved is whether the defects were material and not reasonably discoverable. A defective sewage system is a material fact, and was the only defect at issue in *Fitzgerald v. Balkowitsch*, 288 N.W.2d 761 (N.D.1980), a case involving deceit. In the case at hand, the trial court found not only that the sewage system was defective but also that the water and heating system were defective. Such latent defects were not reasonably discoverable and the trial court did not err in finding that Holcombs were not at fault in failing to discover the defects.[5] We conclude, therefore, that the record clearly and convincingly establishes that the Zinkes breached their duty to disclose to the Holcombs known material facts which were not reasonably discoverable.[6]

---

[5] The trial court also found that the Holcombs' reliance on the realtors' misrepresentations was "in good faith." This reference to good faith is based on the rule in *Asleson* that a buyer has a right to rely on a positive misrepresentation of fact without ascertaining its truthfulness unless the failure to discover the defect is wholly irrational, preposterous or in bad faith. *Asleson* at 543.

[6] Fraud must be proved by clear and convincing evidence. *Jones v. Jones*, 310 N.W.2d 753 (N.D. 1981). Mere failure to disclose any or every

■ The remaining element of constructive fraud, that the Zinkes gained an advantage by their breach of duty by misleading the Holcombs to their prejudice, was clearly and convincingly established by testimony that the Zinkes were paid a higher purchase price for their home than they would have received had they disclosed its true condition. Further, the Zinkes accomplished the sale of their home which they would not have effected had they disclosed its true condition. We are satisfied that the record supports the finding of constructive fraud.[7]

■ As to the timeliness of the Holcombs' rescission, they served notice of rescission on the Zinkes on February 19, 1982. The Zinkes demonstrated no prejudice suffered from the alleged delay between the Holcombs' discovery of the facts giving rise to rescission and their attempted rescission. *See, Berg, supra.* We thus conclude that reasonable diligence was exercised by the Holcombs.[8]

Finally, the Holcombs offered to restore the status quo, including the reasonable value for the use and occupancy of the home.

■ We therefore find sufficient proof of all three elements necessary for rescission and affirm the trial court's award of rescission in favor of the Holcombs. Because Johnson and Nitschke did not appeal, and because the trial court did not err in finding as a basis for direct liability constructive fraud on the part of Zinkes, we need not consider any issues of vicarious liability arising from the conduct of Johnson and Nitschke.

■ The Zinkes raise several other issues. They maintain the trial court erred in admitting certain exhibits, consisting of bills and personal checks written by the Holcombs. The case was tried before the court and in a bench trial it is rare for a trial court to commit reversible error by receiving incompetent evidence. *Atlas Ready-Mix of Minot v. White Properties,* 306 N.W.2d 212 (N.D.1981). The Zinkes have not persuaded us that admitting these exhibits was so prejudicial as to amount to reversible error.

■ Next, the Zinkes complain of an inconsistency between the trial court's memorandum decision and its judgment. If such a discrepancy exists, the judgment prevails. See *Schmidt v. Plains Elec., Inc.,* 281 N.W.2d 794 (N.D.1979). The Zinkes further contend that the trial court erred in granting rescission because the amended complaint failed to request that remedy. Rule 54(c), NDRCivP, is determinative of the issue insofar as it provides that every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. See *Trauger v. Helm Bros., Inc.,* 279 N.W.2d 406 (N.D.1979).

The Zinkes' claim that a number of other findings of fact were clearly erroneous is without merit.

The Zinkes' final argument is that the trial court erred in offsetting the reasonable rental value of the premises against the expenses the Holcombs incurred in suffering from and curing the home's defects.

NDCC § 9-09-04(2) requires that the Holcombs restore to the Zinkes everything of value received under the contract, which includes the reasonable rental value of the premises. *Alton's, Inc. v. Long, supra.* Although there was no evidence on the

---

fact about real property will not justify rescission. Not all facts are material.

---

7. We need not reach the issue of whether or not the representations concerning the zoning constituted constructive fraud because we determine that the suppression of facts of the home's condition amounted to constructive fraud in and of itself. See generally, *Slocum v. Leffler,* 538 P.2d 906 (Or.1975), and *Nantell v. Lim-Wick*

---

*Construction Company,* 228 So.2d 634 (Fla. 1969).

8. The trial court made no finding of fact regarding the timeliness of the rescission, but we overlook that serious lapse in this case because we believe a finding of timeliness is implicit in the finding which the trial court did make that the Holcombs were not at fault in failing to discover the defects.

question of reasonable rental value of the premises, the trial court ascertained that value to be equal to the value of repairs and replacements which approximated $5,300.00.

In *Erling v. Homera, Inc.*, 298 N.W.2d 478 (N.D.1980), this Court remanded for determination by the trial court the reasonable value of the use of a mobile home. We are, however, mindful of the practical consequences to trial judges and lawyers of remanding. Sending this particular case back flies in the face of judicial economy. It cannot seriously be doubted that additional evidence on the question of reasonable value would produce little change, if any, in the amount of the set-off. We believe that under the facts of this case, the de minimis character of the question of reasonable rental value warrants affirmance without remand.

For reasons stated in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.