No. 95-3777

Ronald D. Dole,                          *
                                         *
    Plaintiff/Appellant,               *
                                         *
    v.                                 *
                                         *
USA Waste Services, Inc.,                *
a corporation;                           *
                                         *
    Defendant/Appellee,                *  Appeal from the United States
                                         *  District Court for the
USA Of North Dakota, Inc.;               *  District of North Dakota.
                                         *
    Defendant,                         *
                                         *
Donald Moorhead, an individual;          *
Big Dipper Enterprises, Inc.,            *
a corporation;                           *
John R. Beardmore, an                    *
individual;                              *
                                         *
    Defendants/Appellees,              *
                                         *
Northern Waste Systems, Inc.,            *
a corporation,                           *
                                         *
    Defendant.                         *

Submitted:  October 24, 1996

Filed:  November 19, 1996

Before WOLLMAN, FLOYD R. GIBSON, and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Ronald D. Dole brought state law claims of deceit against various defendants.  The district court[1] granted summary judgment

---

[1]The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

for defendants USA Waste Services, Inc. ("USA Waste") and Donald Moorhead. A jury returned a verdict for the remaining defendants. Dole appeals both the grant of summary judgment and the verdict. We affirm.

## I.    BACKGROUND

In 1976, Dole acquired 320 acres of land near Gwinner, North Dakota. Dole operated a landfill on portions of the property until 1978. At that time, Dole sold thirty-two acres of the property, including the landfill operation, to defendant John R. Beardmore. After the sale, Beardmore's wholly owned company, Big Dipper Enterprises, Inc. ("Big Dipper"), operated the landfill.

In 1990, Beardmore offered to buy Dole's remaining 288 acres. Negotiations culminated in April of 1991 with a contract for sale in which Big Dipper agreed to purchase Dole's land for $591,000. A side agreement anticipated that Big Dipper would then sell all 320 acres and the landfill operation to a third company. In such a case, Dole would be entitled to further consideration, depending on the structure of the subsequent transaction. The agreement did not, however, entitle Dole to participate in any "back-end" stock transaction, by which Beardmore would receive shares of an acquiring company as consideration for selling Big Dipper's interest.[2]

During this time, Beardmore pursued contacts with several other waste disposal companies, seeking to sell Big Dipper's interest in the operation. Beardmore could not complete a deal, however, and was thus unable to meet the original closing deadline and two extensions. In October of 1991, Dole agreed to extend the

---

[2]The record indicates that Dole's attorney sought to include such a term in the agreement, but that Beardmore's attorney rejected these proposals.

closing deadline a third time.  The October extension agreement also contained a provision entitling Dole to further consideration in the event of a subsequent sale of the landfill and a paragraph that provided that: "Beardmore shall promptly furnish to Dole true copies of all proposals, offers, contracts, and other documents showing any potential and actual sales, transfers, and assignments (whole or partial) of the . . . landfill."

In October of 1991, Beardmore finally secured a deal with a third company, defendant USA Waste.[3]  Beardmore mortgaged all of his company's interest in the land to USA Waste in exchange for a $600,000 loan.  With this cash from USA Waste, Beardmore was now able to pay for Dole's 288 acres, and completed the purchase.  After acquiring Dole's land, Big Dipper merged with a subsidiary of USA Waste.  Under the merger, Big Dipper was the surviving corporation and became a wholly owned subsidiary of USA Waste.  In return, Beardmore received 250,000 shares of USA Waste stock, a "put" letter from USA Waste CEO Donald Moorhead and another USA Waste shareholder that obligated them to buy Beardmore's shares at his option, and a royalty agreement that entitled Beardmore to five percent of certain revenues from the landfill.

Dole brought suit, claiming that he was not informed of the Big Dipper-USA Waste deal as his October agreement with Beardmore required.  Specifically, Dole claims the defendants suppressed information about the back-end stock payment to Beardmore, in which Dole was not entitled to participate.  As a result, Dole claims, he was not aware of the possibility that a Big Dipper sale to a third company might include a back-end stock deal, and was unable to

_____

[3]Dole had, in fact, introduced Beardmore to USA Waste's CEO, Donald Moorhead, at some point in 1990.  According to Dole, "[t]he purpose of the contact was to determine if [Moorhead] would be interested in buying the Gwinner landfill."  Appellant's Brief at 8.

protect himself from what he contends was inadequate consideration for his 288 acres.

The district court granted summary judgment in favor of USA Waste and Moorhead. At trial, Dole elected to proceed against Beardmore and the remaining defendants on a claim of deceit. See N.D. Cent. Code § 9-10-02 (1987). After a seven-day trial, a jury returned a verdict for the remaining defendants. Dole appeals the grant of summary judgment and the district court's denial of his motion for a new trial.

## II.  DISCUSSION

### A.  Summary Judgment for USA Waste

On appeal of a summary judgment order, we apply the same standard as the district court, reviewing de novo. Bank of America Nat'l Trust & Sav. Assoc. v. Shirley, 96 F.3d 1108, 1111 (8th Cir. 1996). Summary judgment is appropriate if the record shows no material facts in dispute and that one party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

Dole's claim against USA Waste and Moorhead is premised on section 9-10-02(3) of the North Dakota statutes. Under section 9-10-02(3), one form of deceit is "[t]he suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Actions for deceit under the statute "clearly require that the defendant have a duty to disclose as a prerequisite to liability." Hellman v. Thiele, 413 N.W.2d 321, 328 (N.D. 1987). We agree with the district court that Dole has produced no evidence that indicates USA Waste or Moorhead owed him any duty of disclosure.

Dole first argues that USA Waste and Moorhead were "sufficiently involved in the process by which Mr. Dole was relieved of his acreage to face liability . . . directly." Appellant's Brief at 28. USA Waste and Moorhead were, of course, actively negotiating to acquire Beardmore's and Big Dipper's interests in the land after Big Dipper completed its purchase of Dole's 288 acres. Dole fails to show, however, that the USA Waste-Big Dipper negotiations gave rise to any duty owed by USA Waste to him. He produced no evidence, and indeed does not argue, that USA Waste or Moorhead were directly or substantially involved in the Dole-Big Dipper negotiations.

This case is distinguishable from four North Dakota cases cited by Dole for the proposition that "non-parties to a business transaction [may be] liable for deceit for having suppressed relevant information." Appellant's Brief at 30 (citing Dewey v. Lutz, 462 N.W.2d 435 (N.D. 1990); West v. Carlson, 454 N.W.2d 307 (N.D. 1990); Ostlund Chem. Co. v. Norwest Bank, 417 N.W.2d 833 (N.D. 1988); and Holcomb v. Zinke, 365 N.W.2d 507 (N.D. 1985)). Contrary to Dole's assertion, West and Holcomb both involved parties dealing directly with each other in land transactions. In Ostlund Chemical, the court held that a bank assumed a duty of disclosure only after it voluntarily responded to a request for information from a customer's creditor. 417 N.W.2d at 836. And in Dewey, two defendants negotiated directly with the plaintiffs to further a scheme to defraud the plaintiffs to the benefit of a third defendant. Dewey, 462 N.W.2d at 437-38. None of these cases are analogous to the role and conduct of USA Waste with respect to the Gwinner landfill negotiations. The district court properly concluded that Dole failed, as a matter of law, to establish a duty of disclosure by USA Waste or Moorhead.

Dole alternatively argues that USA Waste and Moorhead are derivatively responsible for Beardmore's and Big Dipper's conduct because USA Waste and Big Dipper were joint venturers. Any

-5-

possible derivative liability by USA Waste and Moorhead is vitiated, however, by the jury's finding that Dole did not prove deceit by Beardmore and Big Dipper.  At any rate, Dole's joint venture theory is unpersuasive.

Under North Dakota law, a joint venture has four elements:

> (1) contribution by the parties of money, property, time, or skill in some common undertaking . . . ; (2) a proprietary interest and right of mutual control over the engaged property; (3) an express or implied agreement for the sharing of profits, and usually, but not necessarily, of losses; and (4) an express or implied contract showing a joint venture was formed.

Thompson v. Danner, 507 N.W.2d 550, 556 (N.D. 1993) (citations omitted). Dole argues that Big Dipper and USA Waste engaged in a joint venture by pooling money and effort in the "common undertaking" of acquiring Dole's 288 acres.  Other than conclusory assertions, Dole points to no evidence in the record of a proprietary interest and right of mutual control between USA Waste and Big Dipper, an agreement for the sharing of profits and losses, or an express or implied contract showing a joint venture. Further, we are not impressed with Dole's assertion that USA Waste's negotiations to acquire Big Dipper's interests show a "common undertaking" to acquire Dole's acreage, rather than a garden variety, arm's-length transaction between independent companies.  There is no support in the record for Dole's claim of a joint venture, and the district court properly granted summary judgment for USA Waste and Moorhead.

**B.    Motion for a New Trial**

Dole moved for a new trial pursuant to Federal Rule of Civil Procedure 59 on the ground that defense counsel's misconduct unfairly prejudiced the trial.  In this diversity action, we review the district court's denial of Dole's new trial motion for abuse of

discretion. <u>Gray v. Bicknell</u>, 86 F.3d 1472, 1480-81 (8th Cir. 1996).

Before trial, Dole moved in limine to exclude evidence of a prior felony conviction. In its ruling on the motion, the court stated that "[t]he court reserves ultimate ruling on the matters contained in the motion in limine as it is not now in a position to know the context in which each issue will be raised at trial." <u>Dole v. USA Waste Servs., Inc.</u>, No. A3-94-25, slip op. at 2 (D.N.D. filed May 19, 1995). Nonetheless, the court decided as its "preliminary disposition" that evidence of the prior felony would be excluded. <u>Id.</u>

At trial, Dole's counsel called as a witness Harlan Klefstad, a local banker. During redirect examination by Dole's counsel, the following exchange occurred:

> **Q.** So tell the jury, please, in your opinion is Mr. Dole an honorable person?
>
> **A.** He's been honorable with us, definitely.
>
> **Dole's counsel:** Thank you. We pass.
>
> **Defense counsel:** Your honor, I believe that opens the door to make an examination about what he knows about this individual's history.
>
> **The Court:** Concerning reputation for being honorable, yes.

Trial Tr. Vol. V, at 112. Defense counsel then proceeded with re-cross examination:

> **Q.** Has Mr. Dole been convicted of a felony to your knowledge?
>
> **Dole's counsel:** Your honor, I object. That is a harpoon of major proportions and totally unfair.

**The Court:** Sustained. The question will be stricken. The jury is instructed to disregard. You will take no knowledge of the question and the answer that may have been suggested that has just been made. You're strongly instructed to disregard. Counsel, different subject. Not that subject.

**Defense counsel:** No further questions.

Id. at 113.

Dole claims that this "blatant violation" of the district court's order in limine was sufficiently prejudicial to justify a new trial. Misconduct by counsel may be so prejudicial as to require a new trial. Sanders-El v. Wencewicz, 987 F.2d 483, 485 (8th Cir. 1993). We are not persuaded, however, that counsel's questioning in this case was in fact misconduct, nor do we believe that it was sufficiently prejudicial to warrant a new trial.

As the district court noted in denying the new trial motion, its order in limine was "preliminary" in nature, and left open the possibility that the issue of Dole's prior conviction might be reconsidered at trial. Further, Dole's lawyer arguably opened the door to this inquiry by questioning the witness about Dole's reputation for honesty. Before inquiring about the witness's knowledge of Dole's conviction, defense counsel asked the court whether this permitted him to question the witness "about what he knows about [Dole's] history." The defense counsel's conduct in these circumstances simply does not rise to the level of misconduct.

Further, Dole has failed to show that this single question was prejudicial. The question was immediately stricken, and defense counsel made no further inquiries. The district court immediately gave a curative instruction, and concluded that the effect of the question was minimal and that the curative instruction was sufficient to allay any possible prejudice. We are also

unpersuaded that this one question rendered the trial unfair. The trial court did not abuse its discretion in rejecting Dole's motion on this basis.

Dole also argues that defense counsel made inflammatory and prejudicial remarks during closing arguments. During closing, defense counsel repeatedly drew the jury's attention to Dole's background, asking "Who is Ron Dole?" and comparing his history to Beardmore's. Dole now contends that the defendants impermissibly sought to prejudice the North Dakota jury against Dole, who is from Indiana, by comparing him to Beardmore, who is from North Dakota. Dole argues that this was a form of the "Golden Rule" argument, by which a local party improperly urges the jury to "depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." Rojas v. Richardson, 703 F.2d 186, 191 (5th Cir. 1983) (citations omitted).

Dole's position, however, is fatally undermined because his counsel failed to object to any of these statements at trial. A party is entitled to a new trial on the basis of misconduct not objected to at trial only if that misconduct rises to the level of plain error. Manning v. Lunda Constr. Co., 953 F.2d 1090, 1092 (8th Cir. 1992). Plain error is generally applicable only in "`extraordinary situations, [when] the error is so prejudicial as to cause a miscarriage of justice.'" Id. at 1092-93 (quoting Thomure v. Truck Ins. Exch., 781 F.2d 141, 143 (8th Cir. 1986)). This is not such an extraordinary situation. We agree with the district court that while counsel's comments may have been "somewhat inflammatory and exhibited poor taste," they are not plain error requiring reversal. Further, Dole's reliance on Rojas is misplaced, as he fails to mention that the court in that case reversed itself on rehearing. Rojas v. Richardson, 713 F.2d 116, 118 (5th Cir. 1983). On rehearing, the court held that the plaintiff's failure to object to a "Golden Rule" argument was not

plain error.  <u>Id.</u>  The district court in the present case properly concluded that Dole was not entitled to a new trial.

**C.  Dole's Other Claims**

Dole raises other arguments, including a challenge to the sufficiency of the evidence to support the verdict, and a challenge to certain jury instructions given by the district court.  We have examined these claims and find them to be without merit.

**III.  CONCLUSION**

For the foregoing reasons, we affirm the district court's grant of summary judgment to defendants USA Waste and Donald Moorhead and its denial of Dole's motion for a new trial.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-