DAVID A. GREGG *vs.* CHARLES A. BALDWIN.

Opinion filed November 12, 1900.

**Notice to Agent—Effect on Principal.**

> To charge a principal with knowledge or notice on the part of his agent, which said knowledge or notice came to the agent prior to his emloyment as such agent, it must appear that such knowledge or notice was present in the mind of the agent when he acted for the principal in the transaction in which the principal is sought to be charged with such knowledge or notice.

Appeal from District Court, Grand Forks County; *Fisk,* J.

Action by David A. Gregg against Charles A. Baldwin. Judgment for defendant, and plaintiff appeals.

Modified.

*Cochrane & Corliss,* for appellant.

Plaintiff took the negotiable note in suit in good faith, without notice of the alleged agreement, as collateral security for money loaned at the time the note was indorsed to him. He is a bona fide purchaser, and therefore protected as against the alleged offset. 4 Am. & Eng. Enc. L. (2d Ed.) 289, 290; § 5130, Rev. Codes. The doctrine of constructive notice has no application to negotiable paper no matter how careless one is in dealing with it. He can claim to be a bona fide purchaser without notice, unless the circumstances show *mala fides.* Mere negligence is not sufficient to effect his rights. 4 Am. & Eng. Enc. L. (2d Ed.) 299, 301; § 4884, Rev. Codes. Authorities are divided on the proposition whether notice to an agent in order to constitute notice to the principal should have been acquired during the time he was acting for his principal, or whether knowledge of facts obtained previous to his employment will be held to be the knowledge of his principal, on it appearing that such knowledge was before his mind at the time he was acting for his principal. 1 Am. & Eng. Enc. L. 1149, 1150; Mechem, Agency, § 721. The party who seeks to charge the principal with knowledge obtained by the agent before the agency has the burden of proof by clear and satisfactory evidence that there was present in the agent's mind a recollection of the knowledge previously obtained by him at the very time he acted for his principal. *Lebanon Savings Bank* v. *Hollinbeck,* 29 Minn. 322; *In re Distilled Spirits,* 11 Wall. 367; *Fairfield Savings Bank* v. *Chase,* 72 Me. 226; Mechem, Agency, § 721; *Yerger* v. *Barz,* 8 N. W. Rep. 769; *Slattery* v. *Schwannecke,* 23 N. E. Rep. 922; *Dresser* v. *Norwood,* 17 C. B. N. S. 466; *Red River Valley, Etc. Co.* v. *Smith,* 74 N. W. Rep. 194; *Trentor* v. *Pothen,* 49 N. W. Rep. 129; *Snyder* v. *Partridge,* 29 N. E. Rep. 851; *Burton* v. *Perry,* 34 N. E. Rep. 60; *Whittenbrock* v. *Parker,* 36 Pac. Rep. 374; *Constant* v. *University,* 111 N. Y. 604; *Wilson* v. *Minnesota,* 36 Minn. 112; 2 Pomeroy, Eq. Jur. § 673. In this state the strict and not the liberal rule as to

notice to an agent being notice to the principal, prevails.    Section 4334, Rev. Codes, is a copy of § 1247 of the proposed New York Civil Code, and as appears from the notes of codifiers, was framed to express the strict rule.    Although the paper be transferred after maturity set-offs between antecedent parties, which arose after the transfer, will not be available against the indorsee.  2 Daniels, Neg. Inst. § 1437.    Baldwin was chargeable with notice because the paper was a negotiable instrument.  *Hollinshead* v. *Stuart,* 8 N. D. 35.

*Bosard & Bosard,* for respondent.

Notice to Russell, appellant's agent, was notice to appellant.    Plaintiff had actual or constructive knowledge of the contract securing the note in suit at the time he purchased.  *Walker* v. *Flouring Mill Co.,* 35 N. W. Rep. 332;  *Hovey* v. *Blanchard,* 13 N. H. 145; *Patten* v. *Ins. Co.,* 40 N. H. 375;  *Hart* v. *Bank,* 33 Vt. 252; *Holden* v. *Bank,* 72 N. Y. 286;  *Brothers* v. *Bank,* 54 N. W. Rep. 786; *Fishkill* v. *Bank,* 80 N. Y. 168;  *Slattery* v. *Schwannecke,* 44 Hun. 83;  *City·Nat. Bank* v. *Bank,* 32 Hun. 110;  *Cragie* v. *Hadley,* 99 N. Y. 134;  *U. S.* v. *Davis,* 2 Hill, 451.    Notice or knowledge acquired by an agent in a prior transaction and present in his mind at the time he is acting as such agent is notice to the principal.  *Distilled Spirits,* 11 Wall. 356;  *Brothers* v. *Bank,* 54 N. W. Rep. 786; *Wilson* v. *Ins. Co.,* 30 N. W. Rep. 401;  *Hovey* v. *Blanchard,* 13 N. H. 145;  *Loring* v. *Brodie,* 134 Mass. 453;  *Bank* v. *Town,* 36 Conn. 93.

BARTHOLOMEW, C. J.    This case must turn upon a question of fact.    It was tried by the court below, and is triable de novo here. Plaintiff sues upon a negotiable promissory note, as indorsee.    Defendant pleads an inherent equity in the note, and alleges that plaintiff took it with notice of such equity.    He succeeded in reducing plaintiff's recovery by the amount of such equity.    The trial court found that plaintiff took the note with knowledge, and upon that question of fact the case hinges.    On March 6, 1896, the defendant, Baldwin, purchased a half section of land from the Security Trust Company at the agreed price of $4,500.    He executed to the grantor five promissory notes for $500 each, and two notes for $1,000 each, taking a contract for a deed.    The two notes last mentioned represented two mortgages then upon the premises, for $1,000 each, which Baldwin was to pay as a part of the purchase price.    One of the mortgages would mature late in the year 1896, and the grantor, by parol, agreed to get that mortgage extended for four years, or until 1901.    A written memorandum showing that such extension was to be made was entered in the loan register of the Security Trust Company.    The home office of this corporation was at Nashua, N. H., but the Western office and principal place of business was at Grand Forks, N. D., and the transaction in question was had at the latter office.    In June, 1896, the North Dakota Milling Company executed and delivered to the Security Trust

Company its promissory note for $25,000. This note the Security Trust Company sold and indorsed to the plaintiff, Gregg. At the same time, and as collateral security on its indorsement, it transferred to said Gregg a large number of notes held by it, and among others the note herein involved, being one of the $500 notes executed by defendant as purchase price upon said land. As a matter of fact, the Security Trust Company failed to have the mortgage on said land that matured in 1896 extended as orally agreed. The holder foreclosed, and defendant, Baldwin, was compelled to incure extra expense, by way of costs of foreclosure and increased interest, to save said land from such foreclosure. It is this expense that he seeks to offset against the note, claiming that plaintiff had knowledge of such agreement for extension.

It is conceded that at this time the plaintiff, Gregg, was the president of the Security Trust Company, and a member of the executive board thereof, and that the transactions of the company, such as the sale of lands, were always intended to be, and as a rule were, submitted to and discussed in detail by the executive board, sitting at the home office of the company, in Nashua, N. H. It is urged that these facts raise a presumption of actual knowledge on his part. We may grant that such a presumption arises. Its force is not great, under the circumstances. It appears that the written contract with defendant was detained in the Western office. The register of loans was, of course, in that office. If the contents of the contract were transmitted to the Eastern office, that alone, without the memorandum upon the loan register, would convey no intimation of any agreement for extension. We have no reason to suppose that plaintiff or the executive board was ever apprised of that memorandum entry. The Security Trust Company was engaged in making loans upon real estate. The memorandum was simply a reminder that a loan was to be made upon that tract of land at a future date at 7 per cent. interest. Naturally the matter would not be reported until the loan was made. There is in the evidence Mr. Gregg's clear and emphatic statement that he knew nothing about such an arrangement. That statement is contradicted only by the circumstances already stated. In our minds, they are far from sufficient to overcome positive testimony.

But respondent insists chiefly that plaintiff must be charged with knowledge by reason of the knowledge of his agent. In the spring of 1896 one Russell was sent from its home office, as agent of the Security Trust Company, to investigate the condition of the Western office, and report the same to the home office. He had full authority to examine all books and papers in the Western office, and to investigate the value of all securities held in that office. The business of the office was at that time large, and loans aggregating about $1,-000,000 were then outstanding. The agent, Russell, entered upon the discharge of his duties, and continued therein until in June, 1896, when he and Mr. Clifford, an officer and general Western manager of the Security Trust Company, went East. The contract with Bald-

win, it will be remembered, was entered into in March, 1896; and the contract was in the vaults of the company, and the memorandum was upon its loan register, during the time that Russell was investigating the condition of the business of the Western office prior to the trip East. The evidence also shows that after the trip to the home office in June, 1896, Russell returned to Grand Forks, and continued his investigations until October, 1896. The note given by the North Dakota Milling Company to the Security Trust Company was sold to the plaintiff, Gregg, while Russell and Clifford were at the home office. It appears that, when the negotiation was being perfected, plaintiff requested Russell to select the notes that were to be transferred to Gregg as collateral security. Respondent insists that Russell became plaintiff's agent in the selection of such notes. Russell testifies to the contrary, and the facts are not inconsistent with the idea that plaintiff, knowing that Russell as agent for the Security Trust Company, had become familiar with the value of its securities, and having confidence in his integrity, was willing to accept such notes as he might designate. Of course, Russell could not be the agent of both parties in such transaction, because their interests were opposed. We shall assume, however, in respondent's favor, that Russell for the moment ceased to be the agent of the Security Trust Company, and became the agent of the plaintiff. It is urged that Russell knew of the agreement for extension made by the Security Trust Company with Baldwin, and of the memorandum in the loan register. Russell testifies that he learned the facts later, but the trial court evidently believed that he was mistaken in that, and we may accept the judgment of the trial court. It is clear, however, that the information obtained before that time was not obtained in the course of his employment as the agent of plaintiff, but was obtained when he was acting in another capacity. Notice to an agent while acting within the scope of his authority, and in reference to a matter over which his authority extends, is, by the unbroken line of decisions, imputed to the principal. But beyond that the authorities are not uniform. The present prevailing and constantly extending doctrine appears to be that knowledge or notice acquired by a person will be attributed to a principal for whom such person subsequently acts as agent, with certain restrictions and limitations. Our statute seems to voice this later rule. Section 4334 reads: "As against a principal both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other." The time at which the notice is acquired would seem to be immaterial under this statute. The principle now generally recognized, upon which the principal is charged with the knowledge of the agent, is not that the agent for the purposes of the transaction is a vice principal, but that the duty rests upon the agent, in fidelity to his principal's interests, to communicate to such principal any knowledge that he may have that would affect such interests. This duty the law presumes the agent has performed. This obligation on the part of the agent to communicate to his prin-

cipal knowledge possessed by him affecting his principal's interests cannot, of course, be measured in any manner by the time at which such knowledge was obtained. If such knowledge was obtained while acting within the scope of his authority, and in reference to a matter over which his authority extended, then the law conclusively presumes that it was imparted, and the principal cannot escape by showing that it was not in fact in the mind of the agent at the critical time when it should have been imparted. But, if such knowledge was obtained at a time prior to the entry upon the agency, then whether or not it was present in the mind of the agent at the time when he acted for his principal in the matter wherein such knowledge became material is generally a question of fact. A case may be conceived wherein the information is of such a character and of so recent a date that it "is impossible to give a man credit for having forgotten." But such cases are rare. In those courts which charge a principal with knowledge acquired by his agent prior to the employment of such agent, it is uniformly held that such knowledge must have been present in the mind of the agent at the time he acted for the principal in the matter wherein the latter is sought to be charged with such knowledge. This holding is based upon the recognition of the frailty of human memory, and the fact that no duty rests upon the agent to disclose knowledge that he has forgotten, or, which is the same thing, that was not present in his mind when its disclosure could have influenced his principal, provided the circumstances be such that the forgetfulness can in law be excused. For full discussions of this subject, see Mechem, Ag. § 721, and cases cited in the notes; 1 Am. & Eng. Enc. L. (2d Ed.) p. 1150, and cases cited in note 2.

In the case at bar the respondent relies upon the fact that Russell must have received knowledge of the details of the transaction between defendant, Baldwin, and the Security Trust Company after March 6, 1896, the date of such transaction, and prior to the time he went East, in June, 1896; and he urges that this fact furnishes strong evidence that the knowledge was present in Russell's mind when he acted as plaintiff's agent in selecting the collateral notes. That it is a circumstance of weight must be admitted. Its weight would be greater were the Baldwin transaction an isolated one, or one of a few. The evidence shows that it was one of many,—presumably, several hundred. Russell was examining them for the purpose of making a final report thereon. The evidence shows that he made memoranda concerning each transaction. He did not trust to memory. He knew that the details of so many transactions could not be carried in the mind. He testifies positively that at the time he selected the collateral notes there was no knowledge or notice present in his mind of any agreement or understanding upon the part of the trust company to procure an extension for Baldwin. His conduct corroborates his testimony. He was at that moment the agent of plaintiff. To him he owed the first duty. He was bound to select valuable collateral. He says he selected the Baldwin note because he knew Baldwin's reputation as a business man. Certain it is that,

if he knowingly selected a note in which inhered an equity that might defeat a recovery upon the note in part or entirely, he was guilty of gross bad faith to his principal. We think the simple fact, if it be a fact, that he received the knowledge in the manner indicated, is entirely insufficient to prove that such knowledge was present in his mind when he acted for plaintiff, when opposed, as it is, by his conduct and his positive testimony. It follows that plaintiff did not take the note in suit with notice of any inherent equities.

We have decided this case along the lines upon which it was presented by counsel. No claim is made that the offset would not be proper if plaintiff took with knowledge. The District Court of Grand Forks county is directed to so far modify its former judgment herein as to render judgment in favor of plaintiff and against defendant for the full amount of the one note for $500 and interest as therein provided, with costs of both courts. Modified and affirmed. All concur.