BOOS, Respondent, v. CLAUDE, et al, Appellants

(9 N. W.2d 262.)

(File No. 8518. Opinion filed April 24, 1943.)

**Louis H. Smith,** of Sioux Falls, for Plaintiff and Respondent.

**Bailey, Voorhees, Woods & Bottum,** of Sioux Falls, and **Otis, Faricy & Burger,** of St. Paul, Minn., for Defendants and Appellants.

RUDOLPH, J. This is an action for personal injuries claimed to have been sustained as the result of an alleged defect in a used automobile sold to the plaintiff by the defendants. The pleadings admit that the defendants, under the name of Murphy Finance Company, are engaged "in the business of financing the purchase and sale of motor vehicles, in repossessing those not paid for and in selling them to the public for the use upon the public highways." The facts disclose that in August, 1939, plaintiff's brother contacted one J. W. McNabb, the assistant manager of the Murphy Finance Company. Plaintiff's brother explained to McNabb that plaintiff was looking for a used car and McNabb suggested the Terraplane car which the Murphy Finance Company then owned and which is the car involved in this dispute. Following this conversation plaintiff's brother delivered this car to plaintiff and after having the car in his possession two or three days, plaintiff went to see McNabb and discussed the purchase of the car with him. Plaintiff's version of this discussion is as follows:

"A. Well, I asked him 'How much do you want for this automobile?' and he says: 'I want $175.00 for it,' so I asked him at this time, I said: 'What kind of condition is this Terraplane in?' and he says: 'Barney, this car is in perfect mechanical condition. We just had this car overhauled, and there's nothing wrong with it;' so I told him at the time—I said: 'Now, I'm taking some boys to Rochester tomorrow morning, and I wouldn't want an automobile that wasn't in good shape, because I can't afford to be responsible for these kids, and I wouldn't want to get out on the road and have anything happen. If we tip over, or whatever happens, it's my fault,' and he says: 'You don't have to worry about this automobile, because it is in perfect shape, and all that's wrong with it, there's a hole in the top from

hail that has been fixed up, and that has been fixed up,' and he told me they had been using the car."

Plaintiff further testified that he would not have purchased the car except for the statements made by McNabb. Following this conversation the plaintiff purchased the car and on the next day plaintiff started his trip in the car from Sioux Falls to Rochester, Minnesota. On this trip while crossing some railway tracks plaintiff applied the brakes of the car and following this application the car "pulled" over to the side of the road out of plaintiff's control. However, with the release of the brakes plaintiff again regained control of the car and drove to a filling station where he left the car and requested that the steering apparatus be checked. Plaintiff later returned to the filling station and upon inquiry was advised that the attendant at the station found nothing wrong with the car and plaintiff then proceeded on his trip. Plaintiff drove slowly for several miles and "everything seemed to work all right." About 15 miles east of the point where plaintiff crossed the railroad tracks and while driving about 40 to 45 miles an hour he attempted to pass a truck. Before plaintiff was able to pass this truck he noticed a car coming toward him and in his attempt to slacken his speed and regain his position behind the truck he applied the brakes on the car and with this application he lost control of the car which plunged into a ditch, struck a cement post and turned over. The car was badly damaged. Plaintiff testified that immediately following this accident his back, legs and hips were numb and that he had a deep gash across his knee. However, within the course of a day or two plaintiff noticed no ill effects from the accident. In the fall and winter of 1940 plaintiff's knee and hip began to bother him, became sore and stiff and caused him trouble from that time until the date of the trial. In the spring of 1941 while carrying a plank, plaintiff's back started to cause trouble and continued to ache and cause pain from that time until the time of the trial. Plaintiff testified that the pain in his back, hip and knee proceeded from the same locations that were injured in the accident. A Dr. Opheim,

in response to a hypothetical question, testified that in his opinion the back, hip and knee troubles of the plaintiff were due to the injuries he had suffered in the accident.

Following the accident an automobile mechanic went to the place of the accident and examined the wreck. This mechanic testified as to a certain defective condition found in the left front spring and front axle which, in his opinion, would cause the brakes of the car to lock. He testified as follows: "the front axle on the left-hand side had been working back and forth on the spring—I could tell by the wear—and I found the center bolt that holds the center spring leaves together, and also holds the spring in place—which the head of the bolt fits down into a hole on the axle—has been worn off for some time, because it was worn down like the end of a pencil, and there was an old—it was an old wear—and the spring clips were all loose, and that let the axle slide back and forth on the spring."

This mechanic further testified that this defective condition should have been discovered upon a reconditioning or overhauling of the car. It is without dispute in the record that the defendants did not have the car reconditioned or overhauled at any time.

The jury returned a verdict for the plaintiff and defendants have appealed.

We consider first appellants' contention that the respondent is precluded from maintaining this action because shortly after the accident respondent commenced and prosecuted to a successful conclusion, an action wherein he sought and recovered the damages he had sustained because of the destruction of the automobile. It is appellants' position that the damages sustained by respondent, both personal and to his property, constitute but a single claim or demand which cannot be split into two or more causes of action. As disclosed by the Annotation 64 A. L. R. 663, it is the majority rule that a single wrongful or negligent act causing an injury to both the person and the property of the same individual, constitutes but one cause of action with separate items of damages and that a recovery of a

judgment for either item of damage may be pleaded in bar of an action to recover for the other item of damage. However, this rule has certain well-defined exceptions—one of which is that where it appears that the plaintiff had no knowledge or means of knowledge of the omitted items in his first suit, his ignorance will excuse him and the judgment in the first action will not bar a subsequent action to recover on the omitted items. See cases cited in the Annotation 2 A. L. R. 534. On this issue the trial court instructed the jury that if the "plaintiff did not know, or could not by the exercise of ordinary care have known, when he brought the former action, that he was injured in such a way that he could have brought suit for his injuries, and that such injuries did not become known to plaintiff until long after he had concluded the former action", then the former action did not constitute a bar to this present action. We are of the opinion that the facts of record warranted the trial court submitting this issue to the jury and that the instruction under which the issue was submitted was a proper instruction.

■ Defendants contend that this action is predicated upon on express warranty, and that by its instructions the trial court injected into the case and permitted a recovery upon the theory of an implied warranty or negligence. We are unable to agree with defendants' contention that the action is based upon an express warranty. The complaint alleges that the defendants negligently warranted the car to be in first-class condition, and then alleges that due to the negligence of the defendants the plaintiff was injured. The plaintiff, perhaps, could have relied upon the warranty, and based his action upon the breach thereof, but this he did not do. The action is based upon negligence and recovery is sought upon this ground. The negligence alleged is the negligent warranty under which the car was sold and purchased. The American as distinguished from the contrary English rule is that a negligent statement whether spoken or written, may be the basis for the recovery of damages. Sherman and Redfield on Negligence, Re-

vised Edition, page 75. However, the rule is not without its limitations. As stated in the case of International Products Co. v. Erie R. Co., 244 N. Y. 331, 155 N. E. 662, 664, 56 A. L. R. 1377; "* * * there must be knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care."

The court instructed the jury by Instruction No. 4, that to constitute a warranty the statement of McNabb must have been relied upon by plaintiff, and that except for such statement, plaintiff would not have purchased the car. By Instruction No. 5, the court instructed the jury as to the duty owing to plaintiff by the defendants; this duty was to use reasonable care in making tests to determine if the car was defective. Neither of these instructions, however, constituted a basis for recovery by plaintiff, but were simply definitive. The basis for recovery was given to the jury in Instruction No. 6; this instruction so far as here material is as follows: "If you find that the defendants were told that plaintiff intended to use said car upon the public highways, and the defendants told the plaintiff that said car was in good working order and in No. 1 mechanical condition, and the plaintiff relied upon such statement and purchased the car by reason thereof, and that the defendants had not used reasonable care in making tests for the purpose of ascertaining defects in said car, and in making necessary repairs; and that the car was defective, and that by reason of such defective condition, the car was wrecked, and the plaintiff was injured," then the plaintiff might recover.

Under this instruction it was necessary for the jury to find all of the elements necessary to make a statement the basis for a recovery. The relationship between the plaintiff and defendants was contractual; defendants knew that plain-

tiff desired the information for a serious purpose, the information was material and relied upon by the plaintiff to his injury and damage; the information was given in violation of the duty owing to plaintiff by defendants. The Michigan court was confronted with a somewhat similar state of facts in the case of Curby v. Mastenbrook et al., 288 Mich. 676, 286 N. W. 123, 126, wherein a recovery was allowed, and the court said, "* * * a dealer cannot represent a car to be in 'perfect condition' where he does not have the knowledge of the condition which he professes, without assuming the risk of injuries proximately caused by such misrepresentation."

■■ As stated above, we are of the opinion that plaintiff could have relied upon the express warranty, rather than having assumed the additional burden of proving that the alleged warranty was made negligently and predicating his right of recovery upon the negligence. However, we are of the opinion that an express warranty negligently made creates a cause of action based upon negligence. That the statements made by McNabb, as testified to by the plaintiff, constituted a warranty is affirmed by the following authorities which we believe state a sound rule: Rittenhouse-Winterson Auto Co. v. Kissner, 129 Md. 102, 98 A. 361; Kuester v. Paige Sales Co., Inc., 209 App. Div. 294, 204 N. Y. S. 547; Worden v. Peck, 245 Mich. 237, 222 N. W. 101; Marsten et ux. v. Bill Warner, Inc., 143 Wash. 58, 254 P. 850; Donaldson v. Carstensen et al., 188 Minn. 443, 247 N. W. 522.

■ We are of the opinion, therefore, that the instructions of the court were not erroneous. Reading these instructions as a whole the case was not submitted to the jury either upon the theory of a breach of an express warranty or implied warranty. The case was submitted under Instruction 6, whereunder it was necessary for the jury to find all the elements necessary to make a statement actionable as being a negligent statement. In this connection, it should be noted that defendants in their answer denied any negligence, and by the assignments of error and argument in this

court have contended that plaintiff was guilty of contributory negligence, all of which is opposed to the contention that the action is one for a breach of an express warranty.

■■ The trial court submitted the question of contributory negligence to the jury under an instruction to which no exceptions were taken. We have reviewed the record and are of the opinion that the evidence is ample to sustain the jury's finding on this issue.

We have considered the objections to the hypothetical question put to Dr. Opheim. We are of the opinion that the question was properly framed and included the pertinent and relevant facts established by plaintiff's evidence.

■■■ Plaintiff objected to a certain question asked the mechanic who testified as an expert. The question was as follows: "So that the whole thing was caused by the fact that this bolt you have up through those little springs there was gone and had been sheared off, and the two clamps from the springs down on the axle were loose." This question was objected to on the ground that it called for a conclusion of the witness. We are inclined to believe that the witness, having qualified as an expert, could properly answer the question, but in any event the overruling of the objection was without prejudice to defendants. This same witness was asked and answered the following questions all without objection by defendants:

"Q. And, from your examination at that time, did you determine what had caused the locking of the brake and what caused the wreck? A. I did.

"Q. And what was it? A. It was the center bolt which —it was the center bolt being sheared off, and the spring clips being loose."

The judgment appealed from is affirmed.

All the Judges concur.