Gil **BOURGOIS, d.b.a. Bourgois Construction Company, Plaintiff and Appellant,**

v.

**MONTANA–DAKOTA UTILITIES CO., Defendant and Appellee.**

**Civ. No. 900279.**

Supreme Court of North Dakota.

March 5, 1991.

Vance K. Hill, Bismarck, for plaintiff and appellant.

Cynthia J. Norland of MDU Resources Group, Inc., Bismarck, for defendant and appellee.

LEVINE, Justice.

Gil Bourgois appeals from a summary judgment dismissing his complaint against Montana–Dakota Utilities Co. (MDU). We affirm in part, reverse in part, and remand for further proceedings.

■ In an appeal from an order granting summary judgment, we view the evidence in the light most favorable to the party who opposed the motion and give that party the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Federal Land Bank of St. Paul v. Asbridge,* 414 N.W.2d 596, 598 (N.D. 1987). Our recitation of facts reflects that principle.

Bourgois was hired by MDU in July 1987 to tear down a closed steam plant. MDU invited several companies to bid for the demolition project and distributed demolition specifications. It also conducted an on-site tour attended by Bourgois. Bourgois attempted, without success, to arrange a second visit to the site. He prepared a bid based on MDU's specifications and his observations made during the on-site tour. Bourgois submitted the lowest bid and he signed a contract with MDU which incorporated MDU's specifications and his bid. Bourgois was to begin work as soon as possible and complete the demolition by September 30, 1987. The contract included a penalty clause for failure to complete the project on time.

During demolition, Bourgois uncovered large blocks of buried concrete. Because he claimed this concrete could not have been reasonably anticipated, he threatened to quit the job unless he was paid extra for removing the concrete. MDU's project supervisor assured Bourgois that he would be fairly compensated and Bourgois continued with the demolition.

The Occupational Safety and Health Administration ordered the demolition stopped three times because Bourgois uncovered hazardous materials which required special handling and disposal before the work could continue. The demolition work continued past the due date and MDU waived the noncompletion penalty for October. Bourgois completed the project November 27, 1987. MDU did not pay extra for the removal of the concrete and deducted an eighteen-day noncompletion penalty from the contract price.

In April 1989, Bourgois brought an action against MDU for damages based on "contract, equitable adjustment to contract, unjust enrichment, quantum meruit, mistake, and intentional or negligent failure to disclose material facts." MDU answered and subsequently moved for summary judgment arguing that under the contract, Bourgois was entitled only to the contract price regardless of unforeseen expenses. The written contract provided, "Contractor acknowledges that Contractor will perform demolition and cleanup work as delineated in this contract and that the sum stated [$95,120] is the maximum compensation to be paid Contractor, notwithstanding any unforeseen difficulties." Bourgois was paid the stated amount, less penalties for late completion.

Bourgois resisted summary judgment on the grounds there were issues of material fact concerning his right to rescind the written contract for mistake or fraud, and concerning his claim for extra compensation for asbestos and PCB removal and the slowdown of the job caused by the presence of these materials.

The district court granted summary judgment in favor of MDU on all issues and dismissed Bourgois' complaint with prejudice. Bourgois appealed.

Under Rule 56, NDRCivP, a movant for summary judgment must show that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts and that he is entitled to judgment as a matter of law. *Federal Land Bank of St. Paul v. Asbridge*, 414 N.W.2d at 598.

On appeal, Bourgois argues, as he did below, that he was entitled to rescind the written contract based on MDU's fraud.[1] A person who has been induced to enter into a contract by fraud may rescind the contract. NDCC § 9–09–02(1). Or, that person may affirm the contract, retain its benefits and obtain damages for injuries from the fraud. *West v. Carlson*, 454 N.W.2d 307, 309 (N.D.1990). Bourgois' conduct shows that he chose to pursue a damages remedy rather than rescission. To rescind the written contract, Bourgois had to satisfy the statutory requirements for rescission. NDCC §§ 9–09–01 through 9–09–04. "Under NDCC 9–09–04, rescission is proper only if the party seeking rescission uses reasonable diligence to rescind promptly and to return everything of value which was received under the contract." *West*, 454 N.W.2d at 309. Compliance with these requirements is a precondition to maintaining a rescission action. *Altons, Inc. v. Long*, 352 N.W.2d 198, 199 (N.D.1984). What Bourgois did upon discovering the concrete, however, was to complete the demolition of the steam plant, accept payment under the contract and bring an action for damages. This is consistent with affirming the contract and bringing a damages action. *See* D. Dobbs, *Handbook of the Law of Remedies* § 9.4 at 620 (1972).

The dispositive issue is, therefore, whether Bourgois raised a dispute of material fact or reasonable inference supporting a claim for damages.

Bourgois contends MDU committed actual fraud because it knew of the buried concrete and did not tell him.

"Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

"2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

"3. The suppression of that which is true by one having knowledge or belief of the fact;

"4. A promise made without any intention of performing it; or

"5. Any other act fitted to deceive."

NDCC § 9–03–08.

Actual fraud includes an affirmative statement of a fact known to be false or the suppression of a fact known to be true. NDCC § 9–03–08(1) and (3). Thus, an essential element in Bourgois' claim of actual fraud is MDU's knowledge of or belief in the existence of the buried concrete.

In opposing summary judgment, Bourgois said that he asked MDU for plans to the steam plant. None of the plans or specifications given by MDU to Bourgois showed the buried concrete. But, Bourgois said, he found a Bismarck architect who had a copy of plans showing the buried concrete. These plans had been delivered by MDU to the architect in the late 1970's. Bourgois also claimed that MDU's chief engineer at the time the plant was closed in the 1960's was familiar with many of the changes in the plant, but Bourgois did not indicate that the engineer was still an MDU employee at the time of the demolition project.

In short, all Bourgois showed or implied was that, in the 1970's, MDU knew of the buried concrete. That evidence, however, does not raise a reasonable inference that in 1987, at the time the contract was negotiated, MDU knew of the buried

---

**1.** Bourgois also argues that rescission was justified because of mistake. We need not consider this argument because of our determination that Bourgois did not actually pursue rescission.

concrete.[2] Corporations know facts because those facts are in the minds of corporate officers or agents. *Gregg v. Baldwin,* 9 N.D. 515, 84 N.W. 373 (1900). *See also* 3 Fletcher Cyclopedia of the Law of Corporations § 790 (1986 Rev.Ed.). To find that knowledge, one must look at the mind of the agent at the time of the transaction in regard to which notice or knowledge is sought to be imputed to the corporation. *Fletcher, supra* at §§ 793–800. Bourgois argues that the district court should have inferred that the corporation knew of the buried concrete when it contracted with him in 1987, because in the 1970's an unnamed MDU employee gave up possession of plans showing the buried concrete. We have said that "[a]n inference is a process of reasoning by which a permissible fact is logically and reasonably drawn by the factfinder from facts already proved ... whereas speculation is mere theorizing ... upon insufficient evidence." *Erickson v. Schwan,* 453 N.W.2d 765, 769 (N.D.1990). The evidence of MDU's knowledge in the 1970's is insufficient to support a reasonable inference that MDU knew of the concrete in 1987. Summary judgment was, therefore, proper on the issue of MDU's actual fraud based on MDU's knowing misrepresentations.

Bourgois also argues that MDU committed "negligent fraud," a theory we have not yet recognized. Under section 9–03–08,

NDCC, actual fraud requires either an intent to deceive or an intent to induce a party to contract. There must be an intent to deceive in those cases described in subsections one, three and four where the statute proscribes misrepresentations known or believed to be false. NDCC § 9–03–08(1), (3), (4); *see e.g., Miller Enter., Inc. v. Dog N' Cat Cent., Inc.,* 447 N.W.2d 639, 644 (N.D.1989); *Zuraff v. Empire Fire & Marine Ins. Co.,* 252 N.W.2d 302 (N.D.1977). But, section 9–03–08 also includes as actual fraud, "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true," in order to induce a party to enter a contract. NDCC § 9–03–08(2). Unlike subsections one, three and four, subsection two requires no knowledge of or belief in falsity. Instead, it requires only a statement based on insufficient information. "[A] statement made for the guidance of others which is not warranted by the information of the person making it is classified as negligent misrepresentation...." *Grenell v. Hermosa Beach,* 103 Cal.App.3d 864, 871, 163 Cal.Rptr. 315, 319 (1980).

California recognizes a negligent misrepresentation claim under its counterpart to section 9–03–08(2), NDCC. Section 9–03–08, NDCC, and California Civil Code § 1572[3] have as their common source the Field Civil Code.[4] We, therefore, view as

**2.** At oral argument, Bourgois said that he would "take depositions of twenty MDU employees that knew of this," if summary judgment is reversed. The proper time, however, to complete discovery is before responding to the merits of a motion for summary judgment. Rule 56(f), NDRCivP, provides a remedy when discovery is necessary to properly respond to a motion for summary judgment. It allows a party to submit an affidavit stating the need for discovery or for a continuance in order to present further affidavits or depositions in opposition to summary judgment. *Smith v. Vestal,* 456 N.W.2d 502, 505–06 (N.D.1990).

**3.** California Civil Code § 1572 provides:

"Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

"1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

"2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

"3. The suppression of that which is true, by one having knowledge or belief of the fact;

"4. A promise made without any intention of performing it; or

"5. Any other act fitted to deceive. (Enacted 1872)."

**4.** The North Dakota Century Code source note to section 9–03–08 states that statute was derived from California Civil Code § 1572. That statement is wrong. The statute was first enacted by the Dakota Territory Legislative Assembly in 1866. The source for that enactment was the Field Civil Code. *See J.P. Furlong Ent., Inc. v. Sun Explor. & Prod. Co.,* 423 N.W.2d 130, 135 n. 15 (N.D.1988). California enacted the Field Civ-

persuasive California's interpretation of section 1572, the counterpart to section 9–03–08, NDCC. *Harwood State Bank v. Charon,* 466 N.W.2d 601 (N.D.1991).

Under the California fraud statute, lack of an intent to deceive does not protect one who makes a false statement without a sufficient factual basis for that statement that induces another to enter into a contract. *Spreckels v. Gorrill,* 152 Cal. 383, 92 P. 1011, 1013–14 (1907). In 1954, Justice Traynor, writing for the court, stated conclusively that the deceit statute in the California Civil Code, section 1710(2), made negligent misrepresentation an actionable form of deceit. *Gagne v. Bertran,* 43 Cal.2d 481, 275 P.2d 15, 20 (1954). While *Gagne* involved deceit, not fraud, the court's discussion included the fraud statute as well.[5] *Id.* Subsequent courts have consistently applied *Gagne* to the fraud and deceit statutes. *See, e.g., Doran v. Milland Dev. Co.,* 159 Cal.App.2d 322, 323 P.2d 792, 794 (1958); *Hale v. George A. Hormel & Co.,* 48 Cal.App.3d 73, 121 Cal. Rptr. 144, 151 (1975); *Yanase v. Auto Club,* 212 Cal.App.3d 468, 260 Cal.Rptr. 513, 516 (1989).

■ South Dakota also derived its actual fraud statute from the Field code, and it retains that statute. *Compare* NDCC § 9–03–08 *with* S.D. Codified Laws Ann. § 53–4–5. Early South Dakota cases applied the statute to circumstances constituting negligence. *See, e.g., McCabe v. Desnoyers,* 20 S.D. 581, 108 N.W. 341 (1906) [even though seller believed his representations were true, false representations that horse was purebred and qualified for registration supported claim for fraud]. The South Dakota Supreme Court, however, has since recognized a negligent misrepre-

sentation claim founded in the general law of negligence. *Boos v. Claude,* 69 S.D. 254, 9 N.W.2d 262, 264 (1943); *see also Moore v. Kluthe & Lane Ins. Agency, Inc.,* 89 S.D. 419, 234 N.W.2d 260 (1975). However, because fraud is a statutory claim in North Dakota, we believe the better approach is California's and we will follow its lead and recognize a statutory claim for relief based on negligent misrepresentation under NDCC § 9–03–08(2).[6]

■ The question is, therefore, whether Bourgois offered some evidence to raise a question of material fact or a reasonable inference that MDU induced Bourgois to enter into a contract by making a false statement about the nature of the demolition project which was unwarranted by the information available to MDU, even though MDU may have believed the statement to be true.

Bourgois set out a statement made to him by MDU's project manager, Gary Flakker, at a settlement meeting following the completion of the project. Flakker told Bourgois that Bourgois could have seen some of the "buried" concrete by looking through an access hole to a service tunnel at the plant. Bourgois argues that if he could have seen the concrete during the site tour, MDU should have seen it. We agree that Flakker's statement raises questions of fact whether some of the concrete was discoverable and whether describing the project without including the buried concrete was warranted by the information available to MDU, that is, whether MDU used reasonable care in forming and communicating that description. Summary judgment was, therefore, improper on

---

il Code in 1872. *Id.* The actual fraud statute we interpret here is common to the Dakota and California enactments and derives from the Field Civil Code.

5. The statutory definitions of actual fraud and deceit are similar. Compare §§ 9–03–08 and 9–10–02, NDCC. This court has ruled that, technically, a fraud action brought under the provisions of chapter 9–03, NDCC, applies only to misrepresentations between parties to a contract, while deceit under the provisions of chapter 9–10, NDCC, applies where there is no con-

tract between the parties. *Olson v. Fraase,* 421 N.W.2d 820, 827 n. 3 (N.D.1988); *see also Dewey v. Lutz,* 462 N.W.2d 435, 442 (N.D.1990).

6. In *Ostlund Chemical Co. v. Norwest Bank,* 417 N.W.2d 833, 836 n. 1 (N.D.1988), we indicated some uncertainty about the relationship between a claim for negligent misrepresentation and our fraud and deceit statutes. After examining California law, we recognize a negligent misrepresentation claim under section 9–03–08(2), NDCC.

Bourgois' claim of negligent misrepresentation under section 9–03–08(2), NDCC.

▮ Bourgois further claimed MDU committed constructive fraud. Constructive fraud is any breach of duty which gains an advantage to the person at fault by misleading another to his or her prejudice. NDCC § 9–03–09(1). Constructive fraud arises from the breach of a duty which is owed ordinarily because of a fiduciary or confidential or other special relationship between the parties. We have identified a fiduciary or confidential relationship as "something approximating business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance he would ordinarily exercise." 37 C.J.S. Fraud § 2, quoted in Asleson v. West Branch Land Co., 311 N.W.2d 533, 539 (N.D.1981). We have held that constructive fraud warrants rescission in the case of the sale of a home as an exception to the rule of caveat emptor. Holcomb v. Zinke, 365 N.W.2d 507, 512 (N.D.1985). The seller of real property has a duty "to disclose material facts which are known or should be known to the seller and which would not be discoverable by the buyer's exercise of ordinary care and diligence." Id. Bourgois asks us to extend the rule applicable to the sale of defective real property to this commercial transaction. We decline. Cf., B.W.S. Investments v. Mid–Am Restaurants, 459 N.W.2d 759 (N.D.1990) [implied warranty of habitability does not apply to commercial leases]. A fiduciary or confidential or other special relationship does not ordinarily exist when businesspersons deal with each other at arm's length. Land Office Co. v. Clapp–Thomssen Co., 442 N.W.2d 401, 406 (N.D.1989); Russell Land Co. v. Mandan Chrysler–Plymouth, Inc., 377 N.W.2d 549 (N.D.1985). Bourgois did not offer any evidence that suggested his relationship with MDU was anything other than at arm's length. Summary judgment was proper on the issue of constructive fraud.

▮ Bourgois also argues that MDU failed to remove asbestos prior to Bourgois' demolition and that he was entitled to compensation for his removal of the asbestos and for the delay in completing the demolition caused by the removal work. The district court noted that Bourgois had raised issues that were not in the pleadings. In his answers to MDU's interrogatories, Bourgois set out his claim for asbestos removal and its basis. The district court also stated that it would assume that the complaint could be amended to include allegations covering those claims. MDU did not challenge Bourgois' claim for extra compensation for removing asbestos. MDU also acknowledged at oral argument that there is a dispute on the question of asbestos and PCB removal. It was inappropriate for the trial court to dismiss this claim for compensation.

For these reasons, we reverse the judgment dismissing Bourgois' claims based on negligent misrepresentation and removal of asbestos, affirm summary judgment on Bourgois' other theories, and remand for further proceedings.

MESCHKE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of ERICKSTAD, Chief Justice, disqualified.

VANDE WALLE, Justice, concurring specially.

I concur in the result. I am not convinced that the duty to reveal ascribed to the owner of defective residential property in Holcomb v. Zinke, 365 N.W.2d 507 (N.D. 1985), should never apply to commercial property. However, I agree that this is not an appropriate case in which to apply the duty.