Steven DAHL, Appellant,

v.

CONAGRA, INC., Appellee.

No. 92–2934.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1993.

Decided July 14, 1993.

Robert G. Hoy, West Fargo, ND, argued (Dean A. Rindy, on the brief), for appellant.

Daniel S. Kuntz, Bismarck, ND, argued (Mark F. Enenbach, Omaha, NE, on the brief) for appellee.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In late 1988, Steven Dahl, a North Dakota farmer, delivered approximately 5,700 hundredweight of navy beans to a public storage warehouse in Cooperstown, North Dakota. The parties entered into a storage agreement that allowed Dahl to store beans at the warehouse, which was owned by ConAgra. Under the terms of the agreement, Dahl could store his beans at the warehouse until they were sold to ConAgra, or he could request redelivery of the beans.

North Dakota law required ConAgra to post its purchasing price "on the board" at any time when it was buying beans. When Dahl delivered his beans to the warehouse, ConAgra was "off the board", meaning that it was not then purchasing beans. ConAgra did not purchase the beans that Dahl delivered. Although North Dakota law prohibited doing so, ConAgra subsequently purchased beans from other growers while it was supposedly "off the board" and while it had Dahl's beans in its warehouse.

Dahl learned of ConAgra's "off-the-board" purchases and filed suit in a North Dakota court alleging constructive fraud and a private cause of action under Section 60–02–20 of the North Dakota Century Code. ConAgra removed the case to United States District Court, invoking the court's original diversity jurisdiction. *See* 28 U.S.C. § 1332. Both ConAgra and Dahl moved for summary judgment. The district court granted ConAgra summary judgment on both issues and denied Dahl's motion. Dahl appeals, maintaining that summary judgment was incorrectly granted on both theories of liability.

## I.

Dahl alleges that ConAgra committed constructive fraud by buying grain from other farmers when it was "off the board." "Constructive fraud is any breach of duty which gains an advantage to the person at fault by misleading another to his or her prejudice." *Bourgois v. Montana–Dakota Utilities Co.*, 466 N.W.2d 813, 819 (N.D.1991) (quoting N.D.Cent.Code § 9–03–09(1)). The cause of action arises when a duty owed by virtue of a fiduciary, confidential, or other special relationship is breached. *Id.* The North Dakota Supreme Court has characterized a fiduciary or confidential relationship as a "business agency, professional relationship, or family tie . . . [that] induce[s] the trusting party to relax the care and vigilance he would ordinarily exercise." *Id.* (citing 37 C.J.S. *Fraud* § 2, *quoted in Asleson v. West Branch Land Co.*, 311 N.W.2d 533, 539 (N.D. 1981)). The court has also stated that the requisite fiduciary, confidential, or special relationship does not ordinarily exist when businesspersons deal with each other at arm's length. *Bourgois*, 466 N.W.2d at 819 (citing *Land Office Co. v. Clapp–Thomssen Co.*, 442 N.W.2d 401, 406 (N.D.1989); *Russell Land Co. v. Mandan Chrysler–Plymouth, Inc.*, 377 N.W.2d 549 (N.D.1985)). The North Dakota Supreme Court has recognized only one exception to this rule. In *Holcomb v. Zinke*, 365 N.W.2d 507 (N.D.1985), the court allowed an action for constructive fraud when a seller of real property failed to disclose latent defects. The *Bourgois* court, however, expressly refused to extend the *Holcomb* exception to commercial transactions, like the one in this case. *Bourgois*, 466 N.W.2d at 819.

The district court concluded that Dahl did not offer any evidence to suggest that his agreement with ConAgra was not made at arm's length. We will not disturb a trial court's findings of fact unless they are clearly erroneous. *See Baggett v. Programs Re-*

*sources, Inc.*, 806 F.2d 178 (8th Cir.1986). Ample evidence supported the trial court's conclusion in this case, and we therefore decline to disturb it.

A party alleging constructive fraud must also show that the fraud caused him or her actual damages. *See Olson v. Fraase*, 421 N.W.2d 820, 827 (N.D.1988). Dahl contends that ConAgra's failure to post its bean prices caused him to suffer damages because he eventually sold his beans for $19 per hundredweight, whereas ConAgra purchased other beans "off the board" for $36 per hundredweight while Dahl's were in storage. At different times in the fall of 1988, however, ConAgra was "on the board" offering between $32 and $36 per hundredweight, and Dahl declined to sell at either price. Dahl also had the option to request redelivery of his beans. He could have sold them to other buyers, but he chose not to do so. Any loss that Dahl incurred resulted from falling bean prices and cannot be attributed to ConAgra's "off-the-board" purchases. Thus, Dahl has failed to demonstrate that he suffered damage from the allegedly fraudulent conduct.

## II.

■ The relevant part of Section 60–02–20 states that "no public warehouseman shall discriminate in the selling, receiving, and handling of grain." N.D.Cent.Code § 60–02–20 (1985). The statute also imposes a duty on a warehouseman to post in a conspicuous place grain prices that it will pay. Dahl argues that this statute implies a private right of action to one injured by a failure to abide by its mandate, but no North Dakota court has ruled on this issue. In a diversity case, of course, "[w]here neither the legislature nor the highest court in a state has addressed an issue, [we] must determine what the highest state court would probably hold were it called upon to decide the issue." *Hazen v. Pasley*, 768 F.2d 226, 228 (8th Cir.1985); *see also Farmer's Union Cent. Exch., Inc. v. Reliance Ins. Co.*, 675 F.Supp. 1534 (D.N.D.1987). The North Dakota Supreme Court in *R.B.J. Apts., Inc. v. Gate City S. & L. Ass'n*, 315 N.W.2d 284 (N.D. 1982), identified several considerations as relevant to determining whether a private right of action is available when a statute does not expressly provide for one. Although the *R.B.J.* court was considering a federal statute, we believe it would look to the same considerations in assessing a state statute. *See also Farmer's Union*, 675 F.Supp. at 1537–38 (predicting whether North Dakota court would imply a private right of action from a state statute, federal court looked to the same three considerations, in addition to asking whether implying a private right of action was consistent with legislative scheme). The *R.B.J.* court asked first if the statute indicated whether it was enacted for the particular benefit of a class of which the plaintiff is a member. *Id.* at 287–88. It next considered whether the implication of a private right of action would intrude upon a regulatory authority. *Id.* at 288–89. Finally, the court looked for indicia of legislative intent, noting that failure expressly to provide a private remedy ordinarily signifies intent that one not be available. We look to these considerations in determining whether Section 60–02–20 of the North Dakota Code confers a private right of action.

Although Section 60–02–20 does not expressly provide for a private right of action, Dahl contends that the statute implies one because its purpose is to protect farmers, and allowing a private right of action would further that purpose. Chapter 60–02 does not state this asserted purpose, though we concede that the North Dakota legislature may have been motivated, at least in part, to protect those storing grain at these facilities. Even though ConAgra's violation of Section 60–02–20 may have harmed Dahl, and even though he may be a member of the group the legislature sought to protect, Dahl does not, without more, have a private right of action.

We next ask whether allowing a private right of action would intrude on the state's regulatory authority. The North Dakota Public Service Commission has the duty and power to investigate all complaints of fraud and injustice, unfair practices, and unfair discrimination under Chapter 60–02 of the North Dakota Code. N.D.Cent.Code § 60–02–03 (1985). Sections 60–02–03 and 60–02–12 empower the Commission to regulate the grain industry and to impose penalties for

any violation of Chapter 60–02. We conclude that the implication of a private right of action from Section 60–02–20, where the legislature has provided a comprehensive regulatory scheme and has not explicitly provided such an action, would be an intrusion on the commission's regulatory authority.

Finally, we consider any indication of legislative intent to provide a private right of action under Section 60–02–20. As noted, the North Dakota Supreme Court has observed that legislative failure expressly to provide a private remedy, while not dispositive, ordinarily indicates intent that one not be available. *R.B.J.*, 315 N.W.2d at 289. The theory of implied private actions is a matter of statutory construction. *Id.* at 287. Following the principle that a particular section is best construed in light of, with reference to, or in connection with an entire statutory scheme, we look to other provisions of Chapter 60–02 for guidance in interpreting Section 60–02–20. *See Erlenbaugh v. United States*, 409 U.S. 239, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972). Section 60–02–12 states that any person who violates any provisions of Chapter 60–02, or any rule promulgated pursuant to that chapter, where punishment is not specified, is guilty of an infraction. The penalty for an infraction under the statute is a maximum fine of $500. N.D.Cent.Code § 12.1–32–01(7). This language in Section 60–02–12 indicates the legislature's intent that a state agency impose fines against one who violates a provision, unless the provision specifies otherwise. Section 60–02–22, on the other hand, illustrates the legislature's practice of expressly providing for a private right of action when it intends that one should be available. That section provides that a warehouse is "liable to the owner [of grain] for delivery of the kind, grade, and quantity of grain called for by the warehouse receipt." *See North Dakota Pub. Serv. Comm'n v. Jamestown Farmers Elev.*, 422 N.W.2d 405 (N.D.1988). Construing Section 60–02–20 in light of Sections 60–02–12 and 60–02–22, we conclude that the legislature did not intend to create a private right of action under Section 60–02–20. If the North Dakota legislature had intended to create a private right of action, it would have expressly done so as it did in Section 60–02–22.

This analysis leads us to conclude that Dahl has no private right of action under Section 60–02–20 of the North Dakota Code.

### III.

For the reasons stated, we affirm the judgment of the district court.